FILED
CLERK, U.S. DISTRICT COURT

JAN 1 _ 2008

CENTRAL DISTRICT OF CALIFORNIA
BY_____DEPUTY

1

2

3

4

5

6

7

8

9           UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

11

12

13

14

15   JAMES BLAKE RAMSEY,            ) ED CV 07-986-JSL (SH)
                                    )
16              Plaintiff,          ) ORDER ADOPTING REPORT
          v.                        ) AND RECOMMENDATION
17                                  ) OF UNITED STATES
     CITY OF BANNING,               ) MAGISTRATE JUDGE
18   CALIFORNIA, a Municipal        )
     Corporation, DOES 1 to 10 Inclusive, )
19                                  )
                Defendants.         )
20   _____ )

21          Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court has reviewed the Complaint

22   and other papers along with the attached Report and Recommendation of the United

23   States Magistrate Judge, and has made a de novo determination of the Report and

24   Recommendation.

25

26

27

28

                                        1

IT IS HEREBY ORDERED that an Order be entered (1) approving and adopting the Report and Recommendation, and (2) directing that plaintiff's Complaint is dismissed with leave to amend.

IT IS FURTHER ORDERED that the Clerk shall serve forthwith a copy of the Order Adopting and the Order of this date on the Plaintiff and counsel for Defendants.

DATED: Jan. 18, 2008

_____

J. SPENCER LETTS

UNITED STATES DISTRICT JUDGE

1
2
3
4
5
6
7



FILED
CLERK, U.S. DISTRICT COURT

DEC 17 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| JAMES BLAKE RAMSEY,<br><br>          Plaintiff,<br><br>     v.<br><br>CITY OF BANNING,<br>CALIFORNIA, a Municipal<br>Corporation, DOES 1 to 10 Inclusive,<br><br>          Defendants. | Case No. EDCV 07-986-JSL (SH)<br><br>REPORT AND RECOMMENDATION OF<br>UNITED STATES MAGISTRATE JUDGE |

        This Report and Recommendation is submitted to the Honorable J. Spencer Letts, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.  For the reasons below, the Complaint should be dismissed with leave to amend.

### BACKGROUND

        On August 7, 2007, Pro Se Plaintiff filed a "Complaint for Damages" ("Cpt.") pursuant to 42 U.S.C. § 1983, alleging deprivations of due process and equal protection, and that various claims of conspiracy.  The Complaint was filed with prepayment of the filing fee and a summons issued.

        Plaintiff names as defendants only the City of Banning, and Does 1 through 10.

1  The Complaint alleges deprivation of the right to privacy, due process, equal protection,

2  and "to be secure in person, house." [Cpt. at 3-6, 11.]   The Complaint further contains

3  alleges several claims of conspiracy.   [Cpt. at 6-11.]   Plaintiff seeks compensatory and

4  punitive damages.   [Cpt. at 12-15.]

5        On August 20, 2007, defendant City of Banning filed a motion to dismiss the

6  Complaint without leave to amend, under Fed. R. Civ. P. 12(b)(6), for failure to state a

7  claim.   Plaintiff's "Response to City of Banning's Motion To Dismiss; Notice of Motion

8  and Motion to Quash Said Motion and Motion for Judgment By Default" ("Opp.")  was

9  filed September 13, 2007.  Defendants' reply ("Reply") and Declaration of Peter J.

10 Ferguson in Reply to Opposition/Response to Motion to Dismiss" was filed September

11 21, 2007.   This matter has been taken under submission and is ready for decision.

12                                **PLAINTIFF'S ALLEGATIONS**

13        The Complaint alleges that plaintiff is a ninety-six year old native Californian and

14 long time resident of defendant City of Banning ("Banning" or "the City"), located in

15 Riverside County.   On July 6, 2006, a tree trimming crew and truck came onto plaintiff's

16 fenced property at the corner of  Nicolet and 6th Streets in Banning  and  "destroyed" a

17 large century plant (agave) , cutting off and "stealing" the blossoming spire of the plant.

18 [Cpt. at 3.]   City official Chuck Thurman authorized the crew to enter plaintiff's

19 property, destroy the agave plant and "steal" its flowering spire. [Cpt. at 5.]   Banning

20 officials and employees knew that plaintiff was and had been seriously ill on and before

21 July 6, 2006.

22        It is alleged that, with minor exceptions,  city officials and employees – "acting

23 under the color of authority" – maintain "an arrogant, bullying, defiant position toward

24 residents – especially toward older and less fortunate persons" and are "rude and

25 disrespectful" toward residents.   [Cpt. at 3-4.]   It is further alleged that plaintiff's

26 electrical power was shut off without cause, even though it was summertime and the

27 outside temperature was 110 degrees. [Cpt. at 4.]

28

1    Incorporating the above, the complaint alleges that on July 6, 2006, the City

2    violated plaintiff's right of privacy (First Cause of Action) and his right to be secure in

3    his person and home (Second Cause of Action). [Cpt. at 3-4.]  It is further alleged that

4    plaintiff requested, but was refused and denied,  police protection "in regard to [the]

5    destruction of [his] private property" in violation of his right to equal protection (Third

6    Cause of Action); that city officials and employees have since engaged in a "conspiracy

7    of silence" regarding the "criminal act" of destroying his property (Fourth Cause of

8    Action). [Cpt. at 5-7.]   Additionally, it is alleged that the City and Riverside County

9    denied plaintiff  [unspecified] "federal funded services" and that Banning Mayor Brenda

10   Salas and Riverside County Supervisor Marion Ashley "conspire[d] to and did deny

11   plaintiff [such] services and equal protection of the law after July 6, 2006" (Fifth Cause

12   of Action).  [Cpt. at 5-8.]

13        In addition to the above,  the Complaint alleges that the Banning Police

14   Department has refused  to return to plaintiff – despite his request  – his wife's wedding

15   rings (worth $25,000) which he had reported as stolen and which had been located and

16   retrieved by a Banning police detective (Sixth Cause of Action: "Conspiracy to Coverup

17   Police Misconduct Federal Funded - Theft") .  [Cpt. at 9-10.]   It also is alleged that in

18   August, 2004, plaintiff filed six claims against the City, including conspiracy to

19   embezzle and embezzlement, which he subsequently reported – to no avail – to the state

20   attorney general for investigation and prosecution (Seventh Cause of Action:

21   "Conspiracy to Coverup Embezzlement of Federal Funds" ). [Cpt. at 10-11.]   Finally, it

22   is alleged that in August 2004, plaintiff reported  abuses of and disrespect for the value

23   of his private property and denial of due process by the City, and that the City "does not

24   meet the standards to be a city of any class, and that authorization under municipal

25   corporation should be revoked" (Eighth Cause of Action: "Depriving of Private Property

26   Without Due Process of Law"). [Cpt. at 11-12.]   Plaintiff seeks compensatory and

27   punitive damages.   [Cpt. at 12-15.]

28

1
2                                  **DISCUSSION**
3  **A.    MOTION TO DISMISS STANDARD**
4          A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil
5  Procedure  tests the legal sufficiency of a claim for relief.  Navarro v. Block, 250 F.3d
6  729, 732 (9th Cir. 2001).   As a preliminary matter, "in reviewing the sufficiency of the
7  complaint, 'the issue is not whether a plaintiff will ultimately prevail but whether the
8  claimant is entitled to offer evidence to support the claims.  Indeed, it may appear on the
9  face of the pleadings that a recovery is very remote and unlikely, but that is not the test.'"
10 McGary v. City of Portland, 386 F.3d 1259, 1261 (9th Cir. 2004), quoting Jackson v.
11 Carey, 353 F.3d 750 (9th Cir. 2003)(quoting Scheuer v. Rhodes, 416 U.S. 232, 236,94
12 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).
13         Where the plaintiff is proceeding pro se, the pleadings must be construed liberally
14 and so as to afford the plaintiff the benefit of any doubt as to the potential viability of the
15 claims asserted.  Jackson v. Carey, 353 F.3d at 757, citing Karim-Panahi v. Los Angeles
16 Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  Material allegations in the complaint
17 are taken to be true, as well as reasonable inferences that may be drawn from them.
18 Navarro, 250 F.3d at  732; Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994)(per
19 curiam)(allegations of material fact are taken as true and construed in the light most
20 favorable to the plaintiff).  "Dismissal is proper only where there is no cognizable legal
21 theory or an absence of sufficient facts alleged to support a cognizable legal theory."
22 Navarro, 250 F.3d at 732 ("A claim may be dismissed [under Rule 12(b)(6)] only if 'it
23 appears beyond doubt that the plaintiff can prove no set of facts in support of his claim
24 which would entitle him to relief.'")(quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78
25 S.Ct. 99, 2. L.Ed.2d 80 (1957))(additional citation omitted); see also Bell Atlantic Corp.
26 v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1964-1965, 1974, 167 L.Ed.2d. 929
27 (2007)(noting that to avoid dismissal under Rule 12(b)(6) for failure to state a claim, a
28

1  plaintiff must provide more than mere labels and conclusions as grounds for entitlement

2  to relief;" "[f]actual allegations must be enough to raise a right to relief above the

3  speculative level" and not simply a pleader's "bare averment that he wants relief and is

4  entitled to it;" at a minimum, plaintiff must (consistent with the pleading standards of

5  Fed.R.Civ. P 8(a)(2)) state a claim "that is plausible on its face")(internal quotation

6  marks and citations omitted).

7      If a court finds that a complaint is subject to dismissal for failure to state a claim,

8  the court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203

9  F.3d 1122, 1126-1130.  Leave to amend should be granted if it appears possible that the

10  defects in the complaint could be corrected, particularly where the plaintiff is pro se. Id.

11  at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995)(pro se

12  litigants must be given leave to amend "unless it is absolutely clear that the deficiencies

13  of the complaint could not be cured").   However, if, after careful consideration, it is

14  clear that a complaint cannot be cured by amendment, the court may dismiss without

15  leave to amend. Cato, 70 F.3d at 1106.

16  **B.    SECTION 1983**

17      In order to state a claim under § 1983, plaintiff must allege that defendants acted

18  under color of state law to deprive plaintiff of a constitutionally protected right. Karim-

19  Panahi v. Los Angeles Police Dept., 839 F.2d 621, 624 (9th Cir. 1988); Haygood v.

20  Younger, 769 F.2d 1350, 1354 (9th Cir. 1985).  To sustain a § 1983 claim for individual

21  liability, plaintiff must establish the "personal involvement" of each defendant in the

22  alleged constitutional deprivation or a "causal connection" between each defendant's

23  wrongful conduct and the deprivation. See Hansen v. Black, 885 F.2d 642, 646 (9th Cir.

24  1989); Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978).  Although the court

25  liberally construes the allegations of plaintiff's pro se pleading, "a liberal interpretation

26  of a civil rights complaint may not supply essential elements of the claim that were not

27  initially pled." Burns v. National Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir.

28

1997)(finding that terminated federal employee failed to state a due process violation against fellow government employees where he alleged in vague and conclusory fashion only that they conspired to suspend and replace him, but did not allege a constitutionally protected interest in his position or defendants' actions which allegedly deprived him of that liberty interest).   Moreover, vague and conclusory allegations of a constitutional violation are insufficient to state such a claim.  Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992).

## C.   MUNICIPAL LIABILITY

Under longstanding Supreme Court authority, a municipality cannot be held liable under § 1983 simply because it employs an individual accused of, or who has engaged in, illegal or unconstitutional conduct.   Monell v. Department of Social Services, 436 U.S. 658, 691, 98 S.Ct. 807, 50 L.Ed.2d 61 (1978)(holding that "[a] municipality cannot be held liable solely because it employs a tortfeasor – or in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory"); see also Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 65 L.Ed.2d 626 (1997)("[I]t is not enough [under Monell] for a §1983 plaintiff merely to identify conduct properly attributable to the municipality.").   A municipality is liable under Monell only if a municipal policy or custom was the "moving force" behind the constitutional violation. City of Canton v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)("a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue")(italics in original); Edgerly v. City and County of San Francisco, 495 F.3d 645, 658 (9th Cir. 2007) ("[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [a constitutional] injury [then] the government as an entity is responsible under section 1983.")(quoting Monell, 436 U.S. at 694)).

Accordingly, to establish municipal liability under Monell, a plaintiff must show

1  "a direct causal link between a municipal policy or custom and the alleged constitutional

2  deprivation." City of Canton, 489 U.S. at 385.  In other words, "[i]t is only when the

3  execution of the government's policy or custom" causes or inflicts the injury "that [a]

4  municipality may be held liable under § 1983." Id. (internal quotation marks and citation

5  omitted); Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006)("Under Monell, a

6  municipality may be held liable under § 1983 only for constitutional violations occurring

7  pursuant to an official government policy or custom.") (citations omitted).

8        Following City of Canton, the Ninth Circuit has stated that in order to state a claim

9  under Monell against the City, plaintiff must allege facts showing that:  (1) he was

10 deprived of a constitutional right; (2) the existence of an express  policy, custom or

11 practice of the municipality;[1]  (3)  the policy, custom or practice  amounted to deliberate

12 indifference to plaintiff's constitutional right; and (4) the policy, custom or practice  was

13 the "moving force behind the constitutional violation." Van Ort v. Estate of Stanewich,

14 92 F.3d 831, 835 (9th Cir. 1997)(internal quotation marks and citations omitted.); see

15 also Trevino v. Gates, 99 F.3d 911, 918 (9th cir. 1996).  Of these requirements, proof of

16 a constitutional violation is a threshold and dispositive prerequisite. Quintanilla v. City

17 of Downey, 84 F.3d 353, 355 (9th Cir. 1997)(noting that a municipality is not liable

18

---

19     [1]"In a *Monell* claim, there are three ways to show a policy or custom of a

20 municipality: (1) by showing a longstanding practice or custom which constitutes the

21 standard operating procedure of the local government entity; (2) by showing that the
   decision-making official was, as a matter of state law, a final policymaking authority

22 whose edicts or acts may be fairly said to represent official policy in the area of decision;

23 or (3) by showing that an official with final policymaking authority either delegated that
   authority to, or ratified the decision of, a subordinate." Rosenbaum v. City and County

24 of San Francisco, 484 F.3d 1142, 1155 (9th Cal. 2007)(internal quotation marks and

25 citation omitted).   Acquiescence in a single instance of unconstitutional conduct is
   insufficient to establish a policy. See Gillette v. Delmore, 979 F.2d 1342, 1346-1347

26 (9th Cir. 1992).  Likewise, "[p]roof of random acts or isolated events is insufficient to

27 establish a custom." Navarro v. Block, 72 F.3d 712, 714 (9th Cir. 1995), citing

28 Thompson v. City of Los Angeles, 885 F.2d 1439, 1444 (9th Cir. 1989).

1   under § 1983 for acts committed pursuant to municipal policy or custom unless the
2   plaintiff first shows that the individual officer or employee violated his constitutional
3   rights), citing City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571, 89
4   L.Ed.2d 806 (1986)(clarifying that whether a municipality authorizes unconstitutional
5   conduct "is quite beside the point" if the plaintiff suffered no constitutional injury at the
6   hands of the individual employee) (per curiam).

7       Thus, in order to state a claim under Monell against the City of Banning, plaintiff
8   would need to allege that he suffered a constitutional injury at the hands of a Banning
9   employee or official, whose conduct conformed to an official city policy, custom or
10  practice.   Plaintiff has not adequately done so.   As discussed more fully below, it is
11  unclear from the factual allegations of the Complaint what specific constitutional injury
12  plaintiff contends he suffered as a result of the tree trimming incident on July 6, 2006.
13  Additionally, plaintiff has failed to allege a policy, custom or practice of Banning that
14  caused or was "the moving force" behind such injury.   Accordingly, plaintiff's claims for
15  municipal liability against the City of Banning should be dismissed with leave to amend.

16  **DUE PROCESS**

17      The Fourteenth Amendment guarantees that no individual "may . . . be deprived of
18  life, liberty, or property without due process of law."   Wolff v. McDonnell, 418 U.S.
19  539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).   As the Supreme Court has
20  emphasized,"the touchstone of due process is protection of the individual against
21  arbitrary action of the government, . . . whether the fault lies in a denial of fundamental
22  procedural fairness, . . . or in the exercise of power without any reasonable justification
23  in the service of a legitimate government objective[.]" County of Sacramento v. Lewis,
24  523 U.S. 833, 845-846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)(internal quotation
25  marks and citations omitted); Matthews v. Eldridge, 424 U.S. 319,  332, 96 S.Ct. 893,
26  47 L.Ed.2d 18 (1976)(due process "imposes constraints on government decisions which
27  deprive individuals of 'liberty' or 'property' interests within the meaning of the Due

28

1   Process Clause . . . of the Fourteenth Amendment.").

2       Due process, however, "is not a technical conception with a fixed content

3   unrelated to time, place and circumstances." Connecticut v. Doehr, 501 U.S. 1, 10, 111

4   S.Ct. 2105, 115 L.Ed.2d 1 (1991), quoting Matthews, 424 U.S. at 335 (quoting

5   Cafeteria & Restaurant Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6

6   L.Ed.2d 1230 (1961)).   As a matter of procedure,  "what process is due when the

7   government seeks to effect a deprivation on its own initiative" requires consideration of

8   "'the private interest that will be affected by the official action;' 'the risk of an erroneous

9   deprivation of such interest through the procedures used, and the probable value, if any,

10  of additional or substitute safeguards'; and lastly, 'the Government's interest, including

11  the function involved and the fiscal and administrative burdens that the additional or

12  substitute procedural requirement would entail.'" Connecticut v. Doehr, 501 U.S. at 10,

13  quoting  Matthews, 424 U.S. at 335.   At a minimum, due process requires reasonable

14  notice and opportunity timely to be heard.   Peralta v. Heights Medical Center, Inc., 485

15  U.S. 80, 84, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988)("Failure to give notice violates the

16  most rudimentary demands of due process of law.")(internal quotation marks and citation

17  omitted).

18      Substantively, due process "protects against government power arbitrarily and

19  oppressively exercised." Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 88

20  L.Ed.2d 662 (1986).   As a threshold matter, a substantive due process claim must "show

21  a government deprivation of life, liberty, or property." Nunez v. City of Los Angeles,

22  147 F.3d 867, 871 (9th C ir. 1988).  However, "the due process guarantee does not entail

23  a body of constitutional law imposing liability whenever someone cloaked with state

24  authority causes harm." County of Sacramento, 523 U.S. 833, 848, 118 S.Ct. 1708, 140

25  L.Ed.2d 1043 (1998).

26      To establish a violation of substantive due process,  "a plaintiff is ordinarily

27  required to prove  that a challenged government action was clearly arbitrary and

28

9

1   unreasonable, having no substantial relation to the public health, safety, morals or

2   general welfare." Pattel v. Penman, 103 F.3d 868, 874 (9th cir. 1996), overruled on

3   other grounds, Nitco Holding Corp. V. Boujikian, 491 F.3d 1086, 1089-1090 (9th Cir.

4   2007).   For example, arbitrary conduct so egregious as to "shock the conscience" may

5   violate substantive due process. See County of Sacramento, 523 U.S. at 845-847.   On

6   the other hand,  "[m]ere negligence or lack of due care by state officials in the conduct of

7   their duties does not trigger the substantive due process protections of the Fourteenth

8   Amendment and therefore does not state a claim under section 1983." Woodrum v.

9   Woodward County, Okl., 866 F.2d 1121, 1126 (9th Cir. 1989), citing Daniels v.

10   Williams, 474 U.S. 327, 330-332, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) and Davidson v.

11   Cannon, 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); Wood v. Ostrander,

12   879 F.2d 583, 587 (9th Cir. 1989)(same).[2]

13        Even construed liberally, the Complaint does not adequately allege either a

14   procedural or substantive due process violation.  The Complaint does  not allege that

15   plaintiff had no notice of or opportunity to contest the City's decision to cut down his

16   agave plant, nor is it alleged that the decision to do was arbitrary and without any

17   justification or reason.  In short, the Complaint does not clearly allege how plaintiff was

18   injured – in the due process sense – as a result of the tree trimming incident, or any other

19   conduct.[3]   Accordingly, to the extent the complaint alleges a due process claim against

20

21   _____

22        [2]The Supreme Court has acknowledged that conduct falling between these two
     extremes – i.e., that is grossly negligent, reckless, or deliberately indifferent to a
23   plaintiff's safety – may, in certain circumstances, be so egregious and arbitrary as to
     violate substantive due process. See County of Sacramento, 523 U.S. at 848-853; accord
24   Wood v. Ostrander, 879 F.2d 583, 587-588 (9th Cir.1988).

25

26        [3]In this regard, it is not clear whether plaintiff is attempting to assert arbitrary
     deprivation of a real property interest or a taking of his property without just
27   compensation. See Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 537-545, 125 S.Ct.
28                                                                        (continued...)

1   the City, it should be dismissed with leave to amend.

2   **EQUAL PROTECTION**

3        The command of the Equal Protection Clause that no person be denied the equal

4   protection of the law " essentially [directs] that all persons similarly situated should be

5   treated alike." City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, 105

6   S.Ct. 3249, 87 L.Ed.2d 313 (1985), citing Plyer v. Doe, 457 U.S. 202, 216, 102 S.Ct.

7   2382, 72 L.Ed.2d 786 (1982);    The Supreme Court has explained that "the purpose of

8   the equal protection clause of the Fourteenth Amendment is to secure every person

9   within the State's jurisdiction against intentional and arbitrary discrimination, whether

10  occasioned  by express terms of a statute or by its improper execution through duly

11  constituted agents."  Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct.

12  1073, 145 L.Ed.2d 1060 (2000)(per cuiram)(holding that the equal protection clause

13  protects not only groups, but individuals who constitute a "class of one.").  Differential

14  treatment based on race, national origin, alienage and religion or which impinges on

15  fundamental rights is  constitutionally suspect and can justified only if tailored to serve a

16  compelling governmental interest. City of Cleburne, Tex., 473 U.S. at 440;  Navarro v.

17  Block, 72 F.3d 712, 716 (9th Cir. 1995).  In most other instances, however, disparate

18  government treatment is not constitutionally impermissible as long as it is rationally

19  related to a legitimate governmental objective. Schweiker v. Wilson, 450 U.S. 221, 230,

20  101 S.Ct. 1074, 67 L.Ed.2d 186 (1981); City of Cleburne, Tex., 473 U.S. at 441 (noting,

21

22       [3](...continued)

23  2074, 161 L.Ed.2d 876 (2005) (discussing the Takings Clause of the Fifth Amendment);

24  Action Apartment Association, Inc. v. Santa Monica Rent Control Board, __ F.3d __,
    2007 WL 4225774 * 4-5 (9th Cir. 2007)(discussing the differences between substantive

25  due process and Takings Clause claims).  This matters, as the Supreme Court requires

26  "that if a constitutional claim is covered by a specific constitutional provision, . . . the

27  claim must be analyzed under the standard appropriate to that specific provision, not
    under the rubric of substantive due process." County of Sacramento, 523 U.S. at 843

28  (internal quotation marks and citations omitted).

1  for example, that heightened review is not applicable to differential treatment based on

2  age, and that the Equal Protection clause in such circumstances requires "only a rational

3  means to serve a legitimate end").   However, "there is no rational basis for [official]

4  action that is malicious, irrational, or plainly arbitrary." Squaw Valley Development Co.

5  v. Goldberg, 375 F.3d 936, 944 (9th Cir. 2004)(internal quotation marks and citation

6  omitted).

7       Following the above,  plaintiff does not allege that he was singled out and unfairly

8  treated differently from similarly situated individuals.  Plaintiff has not clearly done so,

9  nor does the Complaint – even construed liberally – so reflect.  Nor has plaintiff alleged

10  that any disparate treatment to which he was subjected was  not rationally related to any

11  legitimate end.  Accordingly, plaintiff's equal protection claim should be dismissed with

12  leave to amend.

13  **RIGHT TO PRIVACY**

14       The Supreme Court has recognized that "[virtually] every governmental action

15  interferes with personal privacy to some degree.  The question in each case is whether

16  that interference violates a command of the United States Constitution."  United States v.

17  Katz, 389 U.S. 347, 350 n. 5, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)(noting and comparing

18  the  privacy interests protected by the First , Third and Fifth Amendments).  For

19  example, the Fourth Amendment protects what an individual seeks to preserve as private

20  (as opposed to what he or she exposes to the public) from government intrusion – i.e.,

21  search and seizure – so long as the expectation of privacy is reasonable.  Id, at 351-352;

22  see also  Hudson v. Palmer, 468 U.S. 517, 525, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)

23  (whether the Fourth Amendment applies in this context depends on whether there is "a

24  justifiable expectation of privacy . . . at stake[;]" namely, one "that society is prepared to

25  recognize as reasonable")(internal quotation marks and citations omitted); Oliver v.

26  United States, 466 U.S. 170, 177, 104 S.Ct. 173, 80 L.Ed.2d. 214 (1984) (stating that the

27  Fourth Amendment "does not protect the merely subjective expectation of privacy").

28

1   The Supreme Court has also recognized a right to privacy protected by the Fourteenth

2   Amendment which includes "personal rights that can be deemed 'fundamental' or

3   'implicit in the concept of ordered liberty,'" such as "the personal intimacies of the

4   home, the family, marriage, motherhood, procreation, and child rearing." <u>Paris Adult</u>

5   <u>Theatre I v. Slaton</u>, 413 U.S. 49, 65, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973)(internal

6   quotation marks and citations omitted).

7          The complaint does not state what constitutionally recognized privacy interest is

8   being asserted, nor is one evident or suggested by the facts and conduct alleged.  It is

9   insufficient simply to contend that one's privacy has been violated.  Accordingly,

10  plaintiff's privacy claim should be dismissed with leave to amend.

11  **FOURTH AMENDMENT**

12         The Fourth Amendment guarantees "the right of the people to be secure in their

13  persons, houses, papers, and effects, against unreasonable searches and seizures[.]"

14  <u>Soldal v. Cook County, Ill.</u>, 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992).

15  "This text protects two types of expectations, one involving 'searches,' the other

16  'seizures.  A 'search' occurs when an expectation of privacy that society is prepared to

17  consider reasonable is infringed.  A 'seizure' of property occurs when there is some

18  meaningful interference with an individual's possessory interests in that property."  <u>Id.</u> at

19  63, quoting <u>Untied States v.Jacobsen</u>, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85

20  (1984)(footnotes omitted).  The Fourth Amendment applies equally in the criminal and

21  civil context.  <u>Soldal</u>, 506 U.S. at 67;  <u>New Jersey v. T.L.O.</u>, 469 U.S. 325, 335, 105

22  S.Ct. 733, 83 L.Ed.2d 720 (1985)("the Court has long spoken of the Fourth

23  Amendment's strictures as restraints imposed upon 'government action[,]'" namely,

24  "activities of civil as well as criminal authorities").  Ultimately, an official action will

25  survive Fourth Amendment scrutiny if it was reasonable.  <u>Soldal</u>, 506 U.S. at 71

26  (reiterating that "reasonableness is . . . the ultimate standard under the Fourth

27  Amendment")(internal quotation marks and citation omitted).  Whether the

28

13

1   "reasonableness" standard is met depends on a "careful balancing of governmental and

2   private interests." Id, quoting T.L.O., 469 U.S. at 341.

3       Although the Complaint appears to invoke the Fourth Amendment by claiming a

4   violation of plaintiff's right to be secure in his person and house, a factual basis for such

5   a claim is lacking. No conduct indicating an invasion of privacy in the Fourth

6   Amendment sense is alleged, nor evident. The Complaint alludes to a "seizure" of

7   plaintiff's agave plant, but does not make clear whether this, or some other conduct,

8   constitutes a possessory interest in plaintiff's property which was interfered with by the

9   City's conduct . Nor is there any allegation that the City's conduct, in any event, was

10   unreasonable on balance. Accordingly, to the extent that plaintiff seeks to allege a

11   Fourth Amendment claim, it is subject to dismissal with leave to amend.

12   **CONSPIRACY**

13       To establish a conspiracy, plaintiff must establish the existence of an agreement

14   or "meeting of the minds" to violate his constitutional rights, Franklin v. Fox, 312 F.3d

15   423, 441 (9th Cir. 2002)(additional citation omitted), and that an "actual deprivation of

16   [plaintiff's] constitutional rights resulted from the alleged conspiracy." Hart v. Parks,

17   450 F.3d 1059, 1071 (9th Cir. 2006), quoting Woodrum v. Woodward County, Okl., 866

18   F.2d 1121, 1126 (9th Cir. 1989).[4]  Specifically, conspiracy requires proof that the City

19   "intended to violate [plaintiff's] constitutional rights." Hart, 450 F.3d at 1069; citing

20

---

21       [4]To the extent that the Complaint alleges misconduct in the use or appropriation by

22   the City of federal funds, plaintiff must establish that he, individually, suffered a specific

23   injury as a result of such conduct. Valley Outdoor, Inc. v. City of Riverside, 446 F.3d

24   948, 953 (9th Cir. 2006)("To establish standing, [plaintiff] must show: (1) that there is

    an actual or imminent injury, which is concrete and particularized, not hypothetical or

25   conjectural; (2) that the injury is fairly traceable to the City's actions; and (3) that it is

26   likely, not merely speculative, that the injury will be redressed by a favorable decision."),

    citing Lujan v. Defenders of Wildlife, 504 U. S. 555, 560-561, 112 S.Ct. 2130

27   (1992)(additional citation omitted). "Particularized" means "that the injury must affect

28   the plaintiff in a personal and individual way." Lujan, 504 U.S. at 560 n. 1.

1   <u>Franklin</u>, 312 F.3d at 441.  Conclusory allegations are insufficient to establish these

2   necessary prerequisites.  <u>Woodrum</u>, 866 F.2d at 1126.   Because the Complaint contains

3   only broad, conclusory allegations without the necessary specificity, the conspiracy

4   claims are subject to dismissal with leave to amend.[5]

5                          **RECOMMENDATION**

6        It is recommended that the Court issue an Order: (1) approving and adopting this

7   Report and Recommendation; and (2) dismissing Plaintiff's Complaint with leave to

8   amend.

9

10  DATED: _____12/17/07_____

11

12                                         _____

                                           STEPHEN J. HILLMAN

13                                         UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18  _____

19       [5]Although the Complaint is not a model of clarity, it appears that plaintiff is
    attempting to state claims under § 1983.  In any event, it is not readily apparent that any

20  claim is necessarily or solely a state law claim subject to the requirements of
    California's state tort claim act.  <u>See</u> <u>Silva v. Crain</u>, 169 F.3d 608, 610 (9th Cir.

21  1999)("In general, state notice of claim statutes have no applicability to § 1983

22  actions."); <u>Williams v. Horvath</u>, 16 C.3d 834, 836-842, 842, 129 Cal.Rptr. 453

23  (1976)("[T]he California remedy of recourse to the Tort Claims Act need not be first
    sought before a plaintiff is free to invoke the Civil Rights Act.").   It may be that the

24  conspiracy claim alleging misconduct and theft of plaintiff's personal property (jewelry)

25  by Banning police officials might well be such a claim.  The Complaint is not clear, in
    this regard, what constitutional violation plaintiff is alleging with respect to that

26  property.  Because this may be clarified should plaintiff file an Amended Complaint, at

27  this juncture, dismissal on the ground that plaintiff has failed to exhaust his state

28  remedies would be inappropriate.

                                    15